Southern Housing Partnerships, Inc., appeals from a declaratory judgment entered against it in the Jefferson County Circuit Court. We affirm the judgment. The trial court's findings of fact are supported by the evidence, which was presented to the court ore tenus, and the court properly *Page 45 
applied the law to those facts. We adopt the opinion of the trial court as our own.
 "DECLARATORY JUDGMENT
"This cause came on to be heard at an oral hearing on the non-jury issue of whether the Defendant's management agreements have terminated or are terminable at will by Southern Housing Partnerships, Inc. ("Southern Housing"), or whether they may only be terminated upon the happening of certain events which have not yet occurred. The parties have waived their right to a jury trial on this issue and have preserved their right to a jury trial on all other issues presented by the pleadings in this cause. The parties have agreed that a final declaratory judgment may be entered pursuant to Rule 54 (b), Ala.R.Civ.P., as the result of the non-jury proceeding.
"Based upon the testimony, depositions and other evidence presented to it, the Court makes the following findings of fact:
"1. There are two apartment complexes involved in this case. These will be referred to as Stonebridge I and Stonebridge II although several exhibits refer to Stonebridge I simply as Stonebridge.
"2. John Walter Stowers, Sr. ("Stowers Sr.") is chairman of the board of Defendant, Stowers Management Company, Inc. ("Stowers Management Company"). Stowers Sr. and one of his affiliated companies was a developer of Stonebridge I. Stowers Sr. was preparing to develop Stonebridge II when he was contacted by Gordon Sorrell ("Sorrell") who, at that time, was president of Southern Housing. Sorrell represented certain individuals who desired to invest in Stonebridge II. An agreement was reached whereby Stowers Sr. and Forrest E. Waters, Jr. ("Waters") were to finance the construction of Stonebridge II and Sorrell would syndicate it. A partnership was ultimately formed to own Stonebridge I and Stonebridge II with Southern Housing as a general partner and various limited partners. By a handwritten agreement dated July 23, 1979 (Defendant's Exhibit 7) the developers, Stowers Sr. and Waters, and Southern Housing agreed upon the financial terms of the acquisitions and also agreed as follows:
 "`Side Agreement — unless HUD requests that the managing agent be removed, Stowers Management, Inc., will be retained as managing agent on Stonebridge and Stonebridge II.'
"The Court finds from the evidence that Stowers Sr. and Stowers Management Company would not have sold Stonebridge I and Stonebridge II to Southern Housing without the agreement that Stowers Management Company would continue to be the managing agent and that such agreement was a material part of the consideration for the transaction.
"3. Discussions concerning the management agreement continued and another instrument was dated September 17, 1979, and accepted October 22, 1979 (Defendant's Exhibit 8). This instrument reads as follows:
"`Property Management Agreement
"`Stonebridge Apartments
 "`The following parties agree that the managing agent for the Stonebridge I and Stonebridge II Apartments in Montgomery, Alabama, will be Stowers Management, Inc., of Montgomery, Alabama, subject to the approval of the Department of Housing and Urban Development (HUD).
 "`Said firm may be removed and replaced as Managing Agent in the event of gross negligence or knowing wrongdoing. Agent may be removed at the discretion of Southern Housing Partnerships and Gordon S. Sorrell, Jr., in the event such removal is requested by HUD, or any other agency, having jurisdiction over the Project or its operations, or agent may be removed if mismanagement is determined by an independent arbitration board. The arbitration board shall consist of three (3) individuals engaged in the accounting, legal, and real estate professions, respectively, selected on the following basis: One of above selected by Stowers Management, Inc. One selected by SHP and one selected by *Page 46 
mutual consent of both SHP and Stowers Management Co., Inc.'
"The Court finds that this agreement was executed by Sorrell and Greg Church on behalf of Southern Housing.
"Because the apartment complexes were subject to a mortgage which was insured by HUD, the management agreements had to be periodically submitted to HUD for its consent. Prior to the transaction in which Southern Housing became a general partner, the management agreements on Stonebridge I and Stonebridge II had been submitted to HUD by Stonebridge, Ltd., showing Stowers Sr. as a general partner and by S W, Inc., an affiliated company owned by Stowers Sr. and Waters (Plaintiffs' Exhibits 13 and 14). Paragraph 28 of these management agreements stated that the term of the agreement was for two years. At that time two years was the maximum term allowed by HUD. This limitation was removed by HUD in 1982. In June 1982, it was again time to file the management agreements with HUD and this time they were submitted by Stonebridge, Ltd., and Stonebridge II, Ltd., as the owners (Plaintiffs' Exhibits 1 and 2). Paragraph 23 of each management agreement states that the term is one year but Paragraph 25 of each agreement reads as follows:
 "`25. Additional Conditions. The terms and provisions of that certain letter agreement of September 17, 1979 (a true and correct copy of which is attached hereto as Exhibit "A"), are confirmed and ratified, and are incorporated herein and made a part hereof by reference, as if herein set out in full, and, in no respect shall the provisions of said letter agreement, or its term of duration, be limited or affected by any other provision contained elsewhere in this agreement.'
"Although there is some dispute as to whether or not Exhibit A was actually attached to the management agreements, the court finds from the evidence that the reference to Exhibit A was a reference to the Property Management Agreement which is Defendant's Exhibit 8.
"4. The letter dated June 29, 1982, from Southern Housing to John Walter Stowers, Jr. ('Stowers Jr.') (Defendant's Exhibit 17), which transmitted the management agreements to Stowers Management Company reads in part as follows:
 "`You will note that we changed the terms of the agreement from four years to one year. We realize we have a long-term agreement with you, but our current policy in the interest of uniformity is to execute all management agreements for a term of one year.'
"5. While there was additional testimony concerning discussions about a four year term, the Court finds that no agreement was ever reached between the parties which would expand or limit the term of the Property Management Agreement to four years.
"6. The ownership of Southern Housing was subsequently sold and the new owners attempted to terminate the Property Management Agreement by letter dated January 30, 1985 (Defendant's Exhibit 6).
"Based on the above, the Court finds that there was an agreement between Southern Housing and Stowers Management Company concerning the duration of the management contracts and that the agreement is contained in the instrument dated September 17, 1979 (Defendant's Exhibit 8) which is set out in full in the Court's finding of fact number 3. The issue is thus whether the language of the agreement creates a term which is terminable at will (and has thus been terminated by Southern Housing), a term for one year or from year to year, or a term for an indefinite period of time which will only terminate upon the happening of certain specific events as set out in the agreement.
"Stowers Management Company relies heavily on the case ofPhenix City v. Alabama Power Co., 239 Ala. 547, 195 So. 894
(1940), which holds that the parties to a contract may either prescribe a fixed term for its duration or make it depend upon some prescribed contingency. *Page 47 
"The Plaintiffs contend that a contract for services which does not specify its duration is to be construed to be terminable at will [Bierley v. American Cast Iron Pipe Co.,374 So.2d 1341 (Ala. 1979)]; that the Management Agreements sent to HUD in June of 1982 specifically limit the term to one year; that the HUD regulations in 1979 prohibited management agreements with a term of more than two years; and that the Offering Memorandum for Stonebridge II, Ltd. (Plaintiffs' Exhibit 12), did not disclose any long term management agreements and that such an omission would be a material omission under the applicable securities laws.
"Obviously, the intention of the parties controls in construing a written contract, and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous. [Logan v. Citizens National Bank ofOpp, 460 So.2d 1239 (Ala. 1984)].
"From the facts set out above, the court finds that Stowers Sr. would not have sold his interest and the interest of his affiliated companies to Sorrell and Southern Housing if he had not been given the management agreement for Stowers Management Company. The management agreement was first set out in the handwritten instrument dated July 23, 1979, and then set out in more detail in the Property Management Agreement dated September 17, 1979. The Property Management Agreement was then incorporated by reference into the Management Agreements which were sent to HUD in June 1982. Plaintiffs argue that the Property Management Agreement was signed by Greg A. Church, Jr., and Sorrell in their individual capacities and not as agents on behalf of Southern Housing. The Court has already found, in its opinion, that Church and Sorrell acted on behalf of Southern Housing and the Court further finds that Sorrell ratified and accepted the terms of the Property Management Agreement on behalf of Stonebridge, Ltd., and Stonebridge II, Ltd., when he executed the HUD Management Agreements dated June 22, 1982. The Court finds that Paragraph 23 of the HUD Management Agreements did not limit the term of the Property Management Agreement to one year because Paragraph 25 of the HUD Management Agreement specifically stated that it did not so limit the `terms of duration' of the Property Management Agreement. The Court finds that, regardless of what right HUD might have had to require the termination of the Property Management Agreement between 1979 and 1982, the terms and conditions of the Property Management Agreement are binding upon Southern Housing, Stonebridge Ltd., and Stonebridge II, Ltd.
"As to the Plaintiffs' argument that the Property Management Agreement should have been set out in the Offering Memorandum for Stonebridge II, the Court notes that it was stated the Stowers Management Company would be paid a property management fee. It was also stated that `The General Partners have the exclusive right and authority to manage the Partnership and to operate and conduct the business of the Partnership' (page 13, Plaintiff's Exhibit 12) and that `The Limited Partners of the Partnership are given no voice in the management or control of the Partnership and no right to vote on Partnership business, except in limited circumstances.' (Page 13, Plaintiffs' Exhibit 12.) Whether or not this notice was sufficient to meet the requirements of the applicable securities laws is not before the Court at this time. The Court does find, however, that this language is sufficient to give the general partners the right to enter into or re-affirm the Property Management Agreement.
"The determination of the applicability of the law as set out in the Phenix City v. Alabama Power Company case vis-a-vis theBierley v. American Cast Iron Pipe Co. case has been a great deal more difficult than the determination of the facts in this case. However, it appears to the Court that in order to construe the Property Management Agreement to be terminable at will, the Court would have to completely disregard the second paragraph of *Page 48 
the agreement. The same result occurs if the Court determines that the term of the agreement is indefinite and therefore, by law, the term of the agreement is for one year. The Court does not believe it should do this, but instead finds that the Property Management Agreement is effective until the happening of one of the contingencies set out therein.
"It is, therefore, ORDERED, ADJUDGED and DECREED by the Court as follows:
"ONE: The Property Management Agreement dated September 17, 1979, is a valid and binding agreement upon Stowers Management Company, Inc., Southern Housing Partnerships, Inc., Stonebridge, Ltd., and Stonebridge II, Ltd. The Property Management Agreement shall remain in effect until the happening of one of the contingencies set out therein.
"TWO: The Property Management Agreement was not properly terminated by the letter dated January 30, 1985, from Southern Housing Partnerships, Inc., to Stowers Management Company, Inc.
"THREE: The Court expressly determines that there is no just reason for delay in the entry of a final judgment as the issues considered in this declaratory judgment and it expressly directs the entry of final judgment on these issues pursuant to Rule 54 (b), Ala.R.Civ.P.
"DONE and ORDERED this 27th day of September, 1985.
 "/s/ Jack D. Carl
"CIRCUIT JUDGE"
In addition to affirming the declaratory judgment, we also dispose of the companion appeal. After entry of the declaratory judgment, Stowers filed a motion to clarify the order, and the trial court ordered the parties to maintain the status quo. Southern Housing appealed this interlocutory order, which is Case No. 85-292, more than fourteen days after the entry of the order. That appeal and the appeal of the declaratory judgment were consolidated for our consideration. However, we dismiss the appeal of the interlocutory order because Southern Housing did not file the appeal within the time limits provided by Rule 4, Ala.R.App.P., and did not address the issue in its brief. Therefore, as to Case No. 85-113, the declaratory judgment is affirmed; as to Case No. 85-292, the appeal is dismissed.
CASE 85-113, AFFIRMED; CASE 85-292, DISMISSED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.