PER CURIAM.
Defendant, Utilities Board of the City of Tuskegee (“Board”), appeals from a declaratory judgment in favor of the Town of Notasulga based on an alleged breach of a water purchase contract and from the denial of its motion for a new trial on its counterclaim against Notasulga.
The Board and Notasulga signed a contract on December 15, 1973, which was to run for a term of ten years. The Board agreed to supply Notasulga water at the rate of $.30 per 1,000 gallons. Paragraph C(5) of that agreement states:
“(Modification of Contract) That the provisions of this contract pertaining to the schedule of rates to be paid by the Purchaser for water delivered are subject to modification at the end of every 3 year period. Any increase or decrease in rates shall be based on a demonstrable increase or decrease in the costs of performance hereunder, but such costs shall not include increased capitalization of the Seller’s system. Other provisions of this contract may be modified or altered by mutual agreement.”
That contract was amended on February 1, 1978, to provide for a rate of $.56 per 1,000 gallons. The rate was increased a second time on May 1, 1981, to $1.00 per 1,000 gallons in an amendment that also extended the term of the contract to 20 years and allowed for modification at the end of each fiscal year.
Pursuant to that modification provisions, the Board raised the rate again on August 24, 1984, to $2.00 per 1,000 gallons, effective October 1, 1984, due to an increase in the cost of production. Notasulga simultaneously raised water rates to its retail customers but refused to pay the Board according to the new rate, paying instead $1.00 per 1,000 gallons.
The Board continued to supply Notasul-ga with water, and on April 23, 1985, Nota-sulga filed a complaint for declaratory judgment, alleging that the Board had increased its rates without demonstrating an increase in cost of production of water as required by the “Modification of Contract” provision. The Board filed a breach of contract counterclaim with a jury demand, based on Notasulga’s refusal to pay the new rate. At the close of the evidence, the trial judge instructed the jury that it was limited to finding an increase in the Board’s cost of performance to between 17% and 22%. The jury found that the increase in the cost of supplying water to Notasulga from May 1, 1981, to October 1, 1984, was 20%. The trial judge denied the Board’s motion for new trial and declared the effective date of the 20% increase to be October 1, 1985. On appeal, the Board argues that the trial judge erred in instructing the jury that it was limited in its finding to a percentage increase of between 17% and 22%, that is, one directly proportional to the increased cost of production of water between May 1,1981, and October 1,1984. It also claims the trial court erred in finding that the effective date of the water rate increase was October 1, 1985.
Resolution of the first issue necessarily depends on construction of the “Modification of Contract” provision. The Board’s position is that it is not limited under that provision to a rate increase directly propor *230 tional to the increased cost of producing water, but, rather, that upon a showing of any production cost increase, however slight, the Board is entitled to an increase — even a disproportionate increase, and, in this case a 100% increase.
“The intention of the parties controls in construing a written contract, and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous.” Logan v. Citizens National Bank of Opp, 460 So.2d 1239, 1242 (Ala.1984) (citation omitted). “When the terms of a contract are unambiguous, determination of its meaning is a question of law.... Whether or not a written contract is unclear and ambiguous is a question of law for the court.” Universal Development Corp. v. Shader, 382 So.2d 1115, 1117 (Ala.1980).
We find that the “Modification of Contract” provision at issue is unambiguous and, giving it a reasonable construction, that it clearly relates an increase in rates paid by Notasulga to the actual increase in the Board's cost of production. Thus, the dispositive issue is by what percentage the Board may increase the rate Notasulga pays based upon the actual increase in its cost of production from May 1, 1981, to October 1, 1984.
Notasulga’s expert, a certified public accountant of 23 years, testified that, using figures supplied by the Board, the cost of producing 1,000 gallons of water increased 17% during the period in question. The Board’s expert, also a certified public accountant and its auditor of the past seven years, testified initially that the increase in cost of production was 56% but stated that his calculation of that percentage had included a $10,000,000 loan to Tuskegee to build a sewage treatment plant and municipal complex and that, excluding that bonded indebtedness, the increase in cost of production of water was less than 22%. Thus, based upon the expert testimony, the trial court properly instructed the jury as to the percentage range within which it could bring a verdict.
However, the trial court was incorrect in ordering the 20% increase to be effective October 1, 1985. The original contract of December 1973 specifically provided for modification every three years, and the contract as amended on February 1, 1978, allowed modification at the end of every fiscal year. The 1978 amendment also stated:
“At the end of the fiscal year of the Seller, to-wit, September 30, 1978, the Seller shall review its records and determine the cost of the production of water, and make these figures available to the Purchaser and the parties shall then negotiate with respect to any change in rates.”
Thus, the end of the 1984 fiscal year was September 30 and the effective date of the 20% increase should have been October 1, 1984. The trial court is directed to enter an order in accordance with this decision to reflect an effective date of October 1,1984, for the 20% increase.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON, HOUSTON and STEAGALL, JJ., concur.
SHORES, BEATTY and ADAMS, JJ., dissent.