On April 20, 1988, the appellant, Wilma Milton Walls, filed a declaratory judgment action to establish the beneficiary of a savings account established by Daniel L. Tatum, her deceased brother, at the Bank of Prattville. Wilma alleged that the name written on the signature card as the death beneficiary, "Wilma Middleton," was a scrivener's error, and that Tatum had intended that the beneficiary of the account be "Wilma Milton." On April 25, 1988, Tatum's estate moved to intervene in the action, and the Bank of Prattville counter-claimed for interpleader pursuant to Rule 22, A.R.Civ.P.
On November 15, 1988, the trial court granted the estate's motion to intervene and ordered that the testamentary gift of the funds in the savings account had lapsed and that the funds, therefore, must be paid to the estate. The trial court denied Walls's post-trial motion without the hearing required by Rule 59(g), A.R.Civ.P. Walls appealed, and this Court reversed the trial court's judgment for failure to comply with Rule 59 and remanded the case. Walls v. Bank of Prattville, 554 So.2d 381
(Ala. 1989).
On October 2, 1989, after a hearing consistent with Rule 59, the trial court issued an order denying the plaintiff's post-trial motion, which, in essence, sought again to have her declared the owner of the bank account. In its order, the court held:
 "[Wilma Milton Walls] presented no competent evidence to prove by clear and convincing evidence that a mistake was made on the document the subject of this suit or that there was a scrivener's error or mistake made, and the court finds that there was a unilateral mistake made, and [that there was] no competent evidence of a mutuality of mistake upon which the court can find a legal basis for reforming *Page 1083 
the instrument to reflect that the particular bequest was made to Wilma Milton rather than Wilma Middleton, as listed on the bank card."
We reverse and render a judgment for the appellant, Wilma Milton Walls.
Daniel L. Tatum was Walls's brother. On August 29, 1981, he opened a savings account at the Bank of Prattville. The signature card for that account was filled out by one of the bank's employees. A portion of the signature card provided a space for the person opening the account to list a death beneficiary for that account. The signature card for Tatum's savings account listed "Wilma Middleton" as the beneficiary. Tatum died February 28, 1987, with approximately $11,000 in the savings account at the Bank of Prattville.
On April 20, 1988, Wilma filed an action seeking a judgment declaring that the name "Wilma Middleton" on the signature card was a misspelling of "Wilma Milton," which was Walls's name at the time Tatum opened the savings account. Tatum's estate later intervened in this action on the grounds that "Wilma Middleton" does not exist and, therefore, that the gift of the funds in the account should lapse and the proceeds should be included in Tatum's estate.
The trial court heard ore tenus evidence on August 23, 1989. Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's findings of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v.Ames, 514 So.2d 877, 878 (Ala. 1987); Cougar Mining Co. v.Mineral Land Mining Consultants, Inc., 392 So.2d 1177
(Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v. StyleAdvertising, Inc., 470 So.2d 1194 (Ala. 1985); League v.McDonald, 355 So.2d 695 (Ala. 1978). The record in this case shows that the trial court improperly applied the law to the facts presented.
In Logan v. Citizens National Bank, 460 So.2d 1239
(Ala. 1984), this Court held that the designation of a beneficiary to receive proceeds under a payable-on-death (P.O.D.) provision is governed by the law of contract rather than the law of wills. Id. at 1242. In Logan we also stated the principle that "the intention of the parties controls in construing a written contract, and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous." Logan, 460 So.2d at 1242, citingFood Service Distributors, Inc. v. Barber, 429 So.2d 1025
(Ala. 1983).
The language in a contract, however, must be interpreted in light of all of the surrounding circumstances.Johnston-Clark Appraisal Co. v. State Dep't of Revenue,392 So.2d 1164 (Ala. 1980). If the language of a contract is ambiguous or uncertain, the surrounding circumstances, including the construction placed on the language by the parties, are taken into consideration so as to carry out the intention of the parties. City of Montgomery v. Maull,344 So.2d 492 (Ala. 1977). In this case, the language of the P.O.D. provision would appear on its face to be unambiguous in naming "Wilma Middleton" as the beneficiary of Tatum's savings account. If this were the end of our inquiry, we would be compelled to affirm the trial court's judgment. However, when all of the evidence is considered, it is apparent that the P.O.D. provision naming the beneficiary contains a latent ambiguity.
"An ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." Thomas v. Principal Financial Group, 566 So.2d 735
(Ala. 1990).
Once it is determined that a contract term is ambiguous, and one of the parties makes an offer of proof as to surrounding facts and circumstances that would clarify the meaning of the term, the determination of the true meaning is for *Page 1084 
the fact-finder. Quick v. Campbell, 412 So.2d 264 (Ala. 1982);Mass. Appraisal Services, Inc. v. Carmichael, 404 So.2d 666
(Ala. 1981); Alpine Constr. Co. v. Water Works Bd. of the Cityof Birmingham, 377 So.2d 954 (Ala. 1979).
In this case, all of the parties agree that no such person as "Wilma Middleton" exists. In addition, all parties agree that a bank employee, rather than Tatum himself, filled out the P.O.D. card naming the beneficiary. It is also uncontested that Walls was Tatum's sister and that her name, at the time the signature card was filled out, was Wilma Milton. Walls alleges that there was a misspelling of the beneficiary's name on the signature card and that Tatum intended that she — Wilma Milton — be the beneficiary. Based on these facts, we find an apparent latent ambiguity as to the person Tatum intended as beneficiary — either a nonexistent person or his sister, Wilma Milton.
At the August 23, 1989, hearing, the court stated that Tatum's intent was that his sister, Wilma Milton be the beneficiary:
 "THE COURT: All right, sir. I think that if we infer his intent, even though he is not here, I think it would be safe to say he intended to leave that money to Wilma —
"[Wilma's Lawyer]: Milton.
"THE COURT: Milton."
In its order, however, the trial court stated that because Walls had not proven with clear and convincing evidence that there had been a mutual mistake or a scrivener's error, the proceeds would be included in Tatum's estate. In that same order, the court found that there was a unilateral mistake; in the hearing the court had found that Tatum's intent was that the beneficiary be his sister, Wilma Milton. Having found that there was a mistake and that the deceased's intent was that his sister be the beneficiary, the court should have construed the contract in accord with that intent. Charles H. McCauleyAssociates, Inc. v. Snook, 339 So.2d 1011 (Ala. 1976). Therefore, we reverse the trial court's judgment and render a judgment in favor of the appellant.
REVERSED AND JUDGMENT RENDERED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.